UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WHIRLPOOL PROPERTIES, INC., et al.,  )
                                      )
                    Plaintiffs,       )     Case No. 1:03-cv-414
                                      )
v.                                    )     Honorable Joseph G. Scoville
                                      )
LG ELECTRONICS U.S.A., INC., et al.,  )
                                      )     **<u>OPINION</u>**
                    Defendants.       )
_____  )

      This is an action for trademark infringement and false designation of origin pursuant to the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), and unfair competition under Michigan common law.  Plaintiff Whirlpool Properties, Inc. is the owner of registered trademark no. 1,698,772, for the mark "Whisper Quiet" covering dishwashing machines and clothes washing machines.  Plaintiffs bring suit against defendants, who make, import and sell clothes washing machines and dryers under the trademark "LG."  Plaintiffs' claims arise from defendants' affixation of the words Whisper Quiet to the consoles of clothes washing machines and dryers offered for sale in this country.  Plaintiffs seek both monetary and injunctive relief and demand a trial by jury.

      Presently pending before the court are four dispositive motions.  Plaintiffs have moved for summary judgment as to defendants' liability on all counts (docket # 195) and have moved for summary judgment against defendants on their counterclaims and affirmative defenses (docket # 207).  Defendants have moved for summary judgment on their affirmative defense of fair use, and alternatively for a judgment of noninfringement.  (docket # 215).  Defendants have also

moved for summary judgment with regard to plaintiffs' allowable relief, asserting that plaintiffs are entitled to neither a money judgment nor an injunction. (docket # 217). The court conducted oral argument on the first three motions on May 24, 2005, informing the parties that resolution of the motion directed only to remedy would be held in abeyance. For the reasons set forth below, the three pending motions will be granted in part and denied in part.

## Applicable Standard

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Bowling Irrevocable Trust*, 410 F.3d at 309 (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 2930 (2005)).

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004). The court must consider all pleadings, depositions,

affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin*

*City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary

judgment, that party bears the initial burden of pointing out to the district court an absence of

evidence to support the nonmoving party's case, but need not support its motion with affidavits or

other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201

F.3d 784, 787 (6th Cir. 2000); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's

case," the non-moving party has the burden of coming forward with evidence raising a triable issue

of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, a party may not

rest on the mere allegations of his pleadings.  F ED. R. C IV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377,

381 (6th Cir. 2004).  "A mere scintilla of evidence is insufficient . . . ."  *Daniels v. Woodside*, 396

F.3d 730, 734 (6th Cir. 2005); *see Fogert v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir.

2004), *cert. denied*, 125 S. Ct. 1064 (2005).  Rather, a party with the burden of proof opposing a

motion for summary judgment has the burden to come forth with requisite proof to support his legal

claim, particularly where he has had an opportunity to conduct discovery.  *See Minadeo v. ICI*

*Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001).

Somewhat different standards apply when the party with the burden of proof seeks

summary judgment.  When the moving party does not have the burden of proof, he need only show

that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden --

the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals for the Sixth Circuit has recently reiterated that the party with the burden of proof faces "a substantially higher hurdle" when seeking summary judgment in his favor. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Where, as here, the moving party bears the burden of persuasion at trial, the moving party's initial summary judgment burden is higher, "in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561; *Cockrel*, 270 F.3d at 1056 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

The court must therefore carefully differentiate between the summary judgment standard applicable to claims on which plaintiff bears the burden of proof (such as establishment of a *prima facie* case) and defenses (such as the fair use defense) for which defendant bears the burden of proof, on the one hand, and "defensive" motions brought by the party without the burden of proof, on the other.

### Statement of Facts

The evidence before the court discloses the following.

A.    **Whirlpool's Registered Whisper Quiet Trademark**

Plaintiff Whirlpool Corporation is a manufacturer of a broad line of home appliances, including major kitchen appliances and laundry appliances. Plaintiff Whirlpool Properties, Inc. is a related corporation that owns certain intellectual property for the purpose of licensing to Whirlpool Corporation. (In this opinion, plaintiffs will be referred to as "Whirlpool.") Defendant LG Electronics, Inc. is a Korean corporation that manufactures household appliances. Its subsidiary, defendant LG Electronics U.S.A., Inc., purchases goods from LG Electronics, Inc. for distribution throughout the United States. (In this opinion, defendants will be collectively referred to as "LG.")

In the middle 1980's, Whirlpool acquired the KitchenAid brand. As part of the acquisition, Whirlpool succeeded to the Whisper Quiet mark, which was then unregistered. On July 27, 1990, Whirlpool applied to register the mark Whisper Quiet in connection with dishwashing machines and clothes washing machines. In its application, Whirlpool claimed that the mark was first used by its predecessor in connection with dishwashers on or before July 1, 1985, and that its use on clothes washing machines commenced on or before October 1, 1988. (docket # 211, Ex. 1-B). In response to the application, the U.S. Trademark Office issued an office action, finding that the proposed mark was merely descriptive. The examiner found that the mark merely described "a desirable characteristic of the goods; that is, that the goods are very quiet . . . ." (docket # 211, Ex. 1-C). On July 29, 1991, Whirlpool submitted to the PTO a "response to office action," raising two essential points. (docket # 211, Ex. 1-E). Whirlpool's first argument was that the mark was not merely descriptive. In this context, Whirlpool argued that the two words "Whisper" and "Quiet" are arranged to create "a unique and fanciful composite mark," and that it takes "thought and imagination" to arrive at the goods. Whirlpool asserted that the mark "immediately tells the

consumer nothing about the product." (*Id.* at 3).  Whirlpool further argued that, since appliances do not really whisper, the mark was a "cute, offbeat, and imaginative mark. . . ." (*Id.* at 4).  The response document also contained this assertion:  "It is a mark believed to be coined by Applicant and is not believed to be a term in common usage." (*Id.*).  Whirlpool's second argument was that the Whisper Quiet mark had acquired distinctiveness and should therefore be eligible for registration under section 2(f) of the Lanham Act.  (*Id.* at 6).  In support of this alternative argument, Whirlpool submitted the affidavit of Greg McCraw, which indicated that Whirlpool had made substantially exclusive and continuous use of the Whisper Quiet mark in connection with dishwashers for more than five years and had done so with regard to clothes washing machines for over three years.  The affidavit set forth the sales volumes and gross advertising budgets for clothes washers and dishwashers associated with the mark.  (docket # 211, Ex. 1-E).  The examiner accepted Whirlpool's alternative claim of acquired distinctiveness and approved the application pursuant to section 2(f) of the Lanham Act.  (*See* docket # 211, Ex. 1-G).  On April 14, 1992, Whirlpool's application for the Whisper Quiet mark was published, and no person opposed registration thereafter.  Thus, on July 7, 1992, U.S. Trademark 1,698,772 was issued to Whirlpool, covering the Whisper Quiet mark for dishwashing machines and clothes washing machines.[1]  On December 28, 1998, the PTO accepted Whirlpool's affidavit of incontestability.  (docket # 211, Exs. 1-I, 1-J).

It is indisputable that Whirlpool has been using the Whisper Quiet mark continuously since the late 1980's in connection with dishwashers and clothes washers, for which the mark is

---

[1]Whirlpool also applied to register the "KitchenAid Whisper Quiet" mark, with the so-called "shushing woman" design, in November of 1990.  This mark would have covered "sound reduction units as component parts of dishwashing machines and clothes washing machines." (docket # 222, Ex. 38).  Whirlpool, however, allowed the registration to lapse.

registered.  Whirlpool has also used the mark, at least since the early 1990's, in connection with the sale and promotion of other appliances, including refrigerators, clothes dryers, trash compactors, and disposers, for which the mark is not registered.   The evidence, however, does not support Whirlpool's contention that any product has ever been sold under the Whisper Quiet "brand."  The words Whisper Quiet appear on the console of some, but not all, of Whirlpool's washing machines and dryers, often using distinctive "fade-away" letters.  Whirlpool estimates that the Whisper Quiet mark appears on the console of approximately 250,000 clothes washers or dryers now in use.  The evidence does not indicate any instance, however, in which the Whisper Quiet mark appears alone on the console of any appliance.  Rather, each appliance console invariably contains the brand name "KitchenAid," plus a model name, such as "Superba," in addition to numerous other items of information, including the words "Whisper Quiet," "Whisper Quiet Plus," or "Whisper Quiet Ultima."  The washing machine console depicted in Exhibit 1-CC appears typical.  (docket # 211, Ex. 1-CC).  The brand name KitchenAid is featured most prominently, and appears next to the model name Superba.  The words Whisper Quiet are less prominent than several of the other markings contained on the console, such as "Load Size," "Temperature," "Extra Rinse," "Fabric Select," and "Heavy Duty," although the Whisper Quiet mark is more prominent than other words.  It is fair to say that these consoles tend to be brimming with information, to the point where virtually nothing appears especially prominently.  Even at that, Whisper Quiet is among the least prominent markings.  Regarding dishwashers, for which the mark is registered, the words Whisper Quiet formerly appeared on the body of the appliance, but have not done so since 2003.  (docket # 211, Ex. 1, Rose Aff., ¶ 14).  Rather, the words may appear, along with references to other product features, on a removable point-of-purchase sticker.  (*See* docket # 211, Ex. 6).  With regard to certain other

appliances, such as refrigerators, the record indicates that the Whisper Quiet mark has never been affixed to the body of the appliance, but again could appear on a sticker with other features.  (*See* docket # 222, Ex. 33).  Therefore, the evidence clearly shows that the words Whisper Quiet have been used in a trademark sense with regard to many of plaintiffs' appliances, but it stretches reality to contend that Whisper Quiet is perceived as a "brand" (*i.e.*, the principal indicator of source) for any product.

This conclusion is even more strongly supported by Whirlpool's use of the mark in its printed promotional material.  Exhibit F to the affidavit of Michel Marie Rose, trademark legal counsel for Whirlpool Properties, Inc., contains advertising material submitted to the PTO in 1992. (docket # 211, Ex. 1-F).  Included among the documentation were advertisements in catalog pages showing the use of the Whisper Quiet mark.  On a catalog page devoted to clothes washer, the mark Whisper Quiet appears in relatively small type on a reproduction of the console.  In text, however, the words Whisper Quiet appear under the heading "sound reduction systems."  The text states as follows:  "All KitchenAid clothes washers are equipped with one of the two sound conditioning systems, QUIET SCRUB™ or WHISPER QUIET™ Sound Reduction System.  These systems are designed to minimize and absorb operating sounds, making installation near family room or kitchen practical."  (*Id.* at P9399).  Other pages likewise identify Whisper Quiet as a "sound reduction system," (*Id.* at P9401, P9402).  The pages devoted to dishwashers depict consoles, some of which bear the Whisper Quiet mark and others of which do not.  The dishwashers bearing the Whisper Quiet mark on the console are said to have a "WHISPER QUIET™ System for sound reduction" (*Id.* at P9403, P9405) or "sound-absorbing" (*Id.* at P9407, P9408) or a "special insulating system" to keep the power of the machine "discretely hushed." (*Id.* at P9409).  Those machines that do not bear

the Whisper Quiet mark on the console are said in text to have the "QUIET SCRUB™" sound reduction system.  (*Id.* at P9404).  More contemporary promotional material reflected in the record is to the same effect.  Plaintiffs' Exhibit 2D (docket # 211, Ex. 2-D), which consists of pages from plaintiffs' website "KitchenAid.com," promotes KitchenAid appliances, none of which features the Whisper Quiet mark alone.  Rather, under a listing of many features of the product, the reader finds "Whisper Quiet Sound Package."  (*E.g.*, Document P1651). KitchenAid ads frequently describe Whisper Quiet as a "system."  The following statement is typical:  "Our KitchenAid Superba dishwashers have heavy duty Duracote nylon racks designed for convenience, easy loading and durability.  With the Whisper Quiet sound system, you can carry on a phone conversation while it's running."  (Document P662).

Plaintiff's catalogs display the same pattern.  The Major Product Catalog (docket # 222, Ex. 31) contains descriptions of a number of KitchenAid appliances.  The page devoted to "Laundry Products" (clothes washers and dryers) lists as a feature of these products "Whisper Quiet Sound Insulation System."  In the same type face and with equal prominence, the catalog page lists numerous other features, including the following:

> 3-speed Motor with Stepped Spin System
> Sure Care Agitators
> Sure Clean Self-Cleaning Lint Filter
> Cushioned Heat System
> Flo-Thru Drying System
> PowderKote Drum and Inner Door Finish
> Sensor Sure Electronic Temperature Control
> Multi-Temp Drying System with Ultra-Low Heat

(P4314).

In short, the record presently before the court shows that Whirlpool does not use the Whisper Quiet mark primarily to identify a line of appliances, but to identify the presence of a sound reduction system included as a feature on some, but not all, of the KitchenAid home appliances. Furthermore, the feature identified by the Whisper Quiet mark is one of a number of product features touted equally in Whirlpool's promotional material. It would be fair to say that the Whisper Quiet mark is used, at best, as one of Whirlpool's many secondary or even tertiary indicators of product source, with the brand KitchenAid and the model name uniformly receiving more prominence. This conclusion is supported by the report of plaintiffs' own expert, who characterized Whisper Quiet as a "secondary mark of a brand with low market share." (Sandra R. Cogan Report, Plf. Ex. 20, docket # 240, at 10). Whirlpool's proofs do not tend to ascribe success in selling home appliances to the use of this mark, as opposed to the many other marks Whirlpool utilizes in its promotions.

The evidence before the court concerning Whirlpool's investment in the mark is inconclusive. Painting with a broad brush, Whirlpool contends that it has spent an estimated $46 million in the past two years on various advertising campaigns for KitchenAid major appliances, many of which bore or were advertised in connection with the Whisper Quiet mark. (docket # 211, Ex. 2, Brian Maynard Aff., ¶ 6). Whirlpool does not attempt to break out in any meaningful fashion, however, the promotional efforts devoted to the Whisper Quiet mark itself. Even a cursory review of Whirlpool's advertising materials discloses that it employs a plethora of trademarks to identify various features of its products. It would be just as valid to say that Whirlpool had invested $46 million in promoting Sure-Temp™, ClearVue™, AquaSense™, SaniRinse™, or any other of the dozens of marks it employs simultaneously for the same line of products. A reasonable trier of fact would be justified, when reviewing the evidence now before the court, in concluding that Whisper

-10-

Quiet is a relatively minor element of Whirlpool's promotional efforts, with the greatest emphasis being devoted to the KitchenAid mark.  Although the record supports a conclusion that Whirlpool has promoted the Whisper Quiet mark extensively, promotion is usually done in conjunction with a plethora of other marks, so the evidence is inconclusive concerning plaintiffs' investment in this particular mark.  Certainly, a jury would not be entitled to find that the gross advertising figures presented by Whirlpool were exclusively, or even predominantly, devoted to the Whisper Quiet mark.

**B.     LG's Use of Whisper Quiet**

LG, a Korean manufacturer, is a relatively new entrant into the consumer goods market in this country.  In the late 1990's, LG marketed air conditioners, dehumidifiers, and vacuum cleaners in this country using the words Whisper Quiet, either affixed to the product or in connection with advertising.  (*See* docket # 220, Ex. 19).  Plaintiffs lodged no complaint concerning this use of the words Whisper Quiet.

In December 2002, LG began selling full-size clothes washers bearing the words "Whisper Quiet" on the console.   In January of 2003, LG began selling clothes dryers and combination units bearing the same words.

Plaintiffs' Ex. 1-DD depicts a typical console of an LG clothes washing machine. (docket # 211, Ex. 1-DD).  As is often the case, the console is full of information concerning the use of the various dials and buttons controlling the machine.  Set off to the left side of the console is the "LG" logo, the most prominent feature of the console.  Directly below the logo are the following words:

> ULTRA CAPACITY
> DIRECT DRIVE SYSTEM
> STAINLESS STEEL DRUM
> WHISPER QUIET

Each of these words is in a block, sans serif font.  By virtue of their being set off to the left of the console, the LG logo and the block of words that appear thereunder are the most prominent feature of the console, but none of the listed features is, in itself, especially prominent.  The same exhibit also depicts the console of a typical clothes dryer.  Again, the central portion of the console is devoted to the dials and buttons that operate the machine.  The LG logo appears set off to the left, with the following words directly thereunder:

> ULTRA CAPACITY
> STAINLESS STEEL DRUM
> SENSE DRY
> WHISPER QUIET

These words appear in the same block, sans serif text, with the same prominence shown on the clothes washing machines.  There is no evidence that LG uses the words Whisper Quiet in any advertising or promotional materials.  Plaintiffs' Exhibit 2-H, which shows an LG washer and dryer as it appears in a retail outlet, depicts a large promotional banner bearing the words "Quiet Operation," with regard to the dryer.  (docket # 211, Ex. 2-H).  The banner does not contain the words Whisper Quiet, although the consoles of the appliances directly thereunder do bear the words.

It is beyond serious dispute that plaintiffs' and defendants' appliances are competitive and are sold to consumers through the same kind of retail outlets, and can be expected to sometimes appear in the same stores at the same time.  They are generally promoted and advertised in the same

media.  The parties agree that consumers purchasing major household appliances, especially in the premium lines, tend to exercise care in the purchasing decision.

Shortly after Whirlpool objected to LG's use of the term Whisper Quiet on its laundry products, LG stopped placing those words on its product console, replacing them with "Quiet Operation."  LG did not attempt to recall machines already in commerce.

<u>**Discussion**</u>

## I.  **Plaintiffs' *Prima Facie* Case**

Section 32(1) of the Lanham Act, which covers registered trademarks, creates a cause of action against any person who, without the consent of the registrant, uses in commerce any reproduction, copy or colorable imitation of a registered trademark in connection with the sale or offer for sale of goods "in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . ."  15 U.S.C. § 1114(1).  Section 43(a) of the Lanham Act, which applies to all trademarks, provides a right of action against any person who, in connection with any goods or services "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion" as to the origin or source of goods.  15 U.S.C. § 1125(a)(1).  The Lanham Act defines a trademark as including "any word, name, symbol, or device, or any combination thereof" used by a person "to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  The essence of a trademark is a designation in the form of a distinguishing name, symbol or device used to identify a person's goods and distinguish them from the goods of another. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.

763, 768 (1992); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 921-22 (6th Cir. 2003). To

establish a *prima facie* case of trademark infringement under either section of the Lanham Act, a

plaintiff must establish (1) its ownership and continuous use of a protectible trademark and (2) that

defendant's acts are likely to cause confusion. *See Comerica, Inc. v. Fifth Third Bankcorp*, 282 F.

Supp. 2d 557, 567 (E.D. Mich. 2003). The elements of plaintiffs' state-law claim for unfair

competition are identical. *See Aero-Motive Co. v. U.S. Aeromotive, Inc.*, 922 F. Supp. 29, 35 (W.D.

Mich. 1996). Because Whirlpool enjoys an incontestable registered trademark with regard to clothes

washing machines and dishwashers, but not with regard to clothes dryers, each product line must be

analyzed separately.


A.    Clothes Washing Machines

Whirlpool registered the trademark Whisper Quiet for washing machines and

dishwashers, and no party challenged the registration within five years. Pursuant to the Lanham Act,

the Whisper Quiet trademark is now incontestable with regard to those goods specified in the

registration. 15 U.S.C. § 1115(a). The incontestable registration is conclusive evidence of the

validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to

use the mark on or in connection with the goods specified in the registration. 15 U.S.C. § 1115(b).

By virtue of the statute, the registered mark Whisper Quiet cannot be challenged as merely

descriptive or on the ground that it lacks secondary meaning. *See Park 'N Fly, Inc. v. Dollar Park

and Fly, Inc.*, 469 U.S. 189 (1985).

With regard to dishwashers and clothes washing machines, the present record leaves

no reasonable doubt that Whirlpool is the owner of the incontestable registered trademark Whisper

Quiet and has used it continuously in commerce for at least fifteen years.  Plaintiffs are therefore entitled to a summary judgment on this element of their *prima facie* case.

  B. <u>Clothes Dryers</u>

   As noted above, the registration for the Whisper Quiet mark covered only clothes washing machines and dishwashing machines.  Whirlpool has not registered the Whisper Quiet mark with regard to clothes dryers.  In alleging trademark infringement arising from LG's affixation of the words Whisper Quiet to its clothes dryers, Whirlpool may theoretically proceed on one or both of the following theories.  First, Whirlpool may contend that clothes dryers are so closely related to clothes washing machines (and/or dishwashers) that the use of the words Whisper Quiet on clothes dryers infringes the registered mark by creating a likelihood of confusion.  Second, plaintiffs may attempt to prove that the Whisper Quiet mark, although not registered for clothes dryers, has garnered secondary meaning arising from Whirlpool's use of the mark in connection with its clothes dryers.  Whirlpool clearly claims that it owns the trademark Whisper Quiet with regard to clothes dryers, even though it has not registered the mark for this product.  (*See* Plf's Brief, docket # 211, at p. 1, ¶ 1; docket # 211, Ex. 1, Rose Aff., ¶ 2 (Whirlpool owns "all rights to the mark 'Whisper Quiet' as applied to laundry appliances, namely clothes washers and dryers, as well as for sound reduction systems contained within such products.")).

   It has long been held that a trademark may be infringed by its use on related, but noncompetitive goods.  *See, e.g., Yale Elec. Corp. v. Robertson*, 26 F.2d 972 (2d Cir. 1928); *Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407 (2d Cir. 1917).  The "related goods doctrine" measures whether a reasonably prudent consumer would believe that noncompetitive but related

goods sold under similar marks come from the same source, or are affiliated with, connected with, or sponsored by the same trademark owner. *See Hindu Incense v. Meadows*, 692 F.2d 1048, 1050-51 (6th Cir. 1982); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201-02 (11th Cir. 2001). The law gives the trademark owner protection against the use of its mark on products which would reasonably be thought by the buying public to come from the same source or to be somehow affiliated with or sponsored by the trademark owner. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001). Consequently, even though a plaintiff does not have a registered trademark covering product B, the plaintiff may argue that defendant's use of the mark on product B infringes plaintiff's registered, incontestable mark covering product A, on the theory that product A is closely related to product B and therefore a likelihood of confusion as to source exists. Contrary to defendants' argument, this does not expand the scope of the registered mark.

Whirlpool errs, however, when it suggests to this court that the court may merely assume (or take judicial notice of the fact) that clothes washing machines and clothes drying machines are related. Rather, the related goods doctrine is merely one aspect of the broader inquiry whether defendant's conduct has created a likelihood of confusion. *See Hindu Incense*, 692 F.2d at 1050-51 (trademark protection is "not limited to goods specified in the registration, but goes to any goods which are 'likely to cause confusion' in the public's mind") (quoting *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir. 1966)). Indeed, the relatedness of goods is one of the familiar eight factors for judging likelihood of confusion, as set forth by the Court of Appeals in the seminal case of *Frisch's Restaurants, Inc. v. Elbie's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). The Sixth Circuit has never held that a trademark owner may prevail merely by announcing that defendant's noncompeting goods are "related" to goods upon which plaintiff enjoys

-16-

a registered trademark.  Rather, the degree of relationship is a question of fact, to be weighed with the other relevant factors in determining likelihood of confusion.  *See Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1118 (6th Cir. 1996).  Consequently, in challenging LG's use of the words Whisper Quiet on its clothes dryers, Whirlpool may rely on its incontestable trademark relating to clothes washing machines (and/or dishwashers), but must bear the burden of showing, under the related goods doctrine, that defendant's use of the mark on clothes dryers creates a likelihood of confusion.  Whirlpool could pursue this theory even if it had never sold *any* clothes dryers with the Whisper Quiet mark.

The amended complaint clearly alleges plaintiffs' claim to common-law rights in the mark relating to dryers, in addition to its rights arising from the registered mark for dishwashers and clothes washing machines.  (docket # 41, Am. Compl., ¶¶ 9, 22).  Whirlpool claims "all" rights in the Whisper Quiet mark for clothes dryers.  (docket # 211, Ex. 1, Rose Aff., ¶ 2).  Whirlpool must establish this right without the benefit of incontestability, which relates only to the goods or services specified in the application.  15 U.S.C. § 1115(b).  Stripped of the benefits of incontestability, Whisper Quiet, standing alone, is revealed as an exceedingly weak mark.  The PTO was quite correct in characterizing the mark as "descriptive."[2]  A descriptive mark is one that directly and immediately

---

[2] Briefly, with regard to the strength of a mark, federal law recognizes a spectrum ranging from (1) generic or common descriptive marks, (2) merely descriptive marks, (3) suggestive marks, to (4) arbitrary or fanciful marks.  A generic term is the weakest type of mark, as it merely names the relevant good or service.  It cannot become a trademark in any circumstances.  Descriptive terms, coming next in the hierarchy, merely describe a characteristic or ingredient of an article.  A descriptive mark is entitled to protection only upon a showing of secondary meaning.  The third type of mark, suggestive, suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods.  The strongest type of mark, fanciful or arbitrary, has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached.  Suggestive and arbitrary marks do not require a showing of secondary meaning.  *See*

conveys some knowledge of the characteristics of a product.  2 J. THOMAS MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, § 11:16 at 11-21 (4th ed. 2005).  The words "Whisper Quiet" directly describe a characteristic of the appliance, namely, that it is as quiet as a whisper.  It does not take a Ph.D in linguistics to recognize that placing a noun before an adjective in the English language is a commonplace device used to create an implied comparison.  "Rock solid" means solid as a rock; "lightning fast" means as fast as lightning; "diamond hard" means as hard as a diamond; "pillow soft" means soft as a pillow; and "whisper quiet" means as quiet as a whisper.  Defendant has produced an expert witness report from Dr. Ronald Butters (docket # 219, Ex. 15) explaining this familiar device in the English language (which he calls a "transparent lexical compound" or simulative), both in general and with specific reference to the term Whisper Quiet.  Dr. Butters reports that the *Oxford English Dictionary* contains hundreds of simulative compounds (such as razor thin, bone dry, and rock hard) and that their meaning is natural and transparent to English speakers.  (docket # 219, Ex. 15 at 32).  Dr. Butters documents the appearance of the term "whisper quiet" in literature as early as 1901.  (*Id.* at 20).  His report contains reproductions of advertisements from the 1930's using the term "whisper-quiet" to describe an automobile engine (*Id.* at 23), a Westinghouse fan (*Id.* at 24), and a Frigidaire refrigerator (*Id.* at 27).  The first documented use of the term in commerce to describe a clothes washing machine was in 1940 by Westinghouse (*Id.* at 27); Hotpoint used the term in a dishwasher ad in 1958 (*Id.* at 34).  By 1960, the term had been used in commercial advertising for at least seventeen mechanical products sold under thirty different brand names, including refrigerators, washing machines, furnaces, air conditioners, and vacuum cleaners.  (*Id.* at 35-36).

---

*generally, Champions Golf Club*, 78 F.3d at 1116-17.

Even without this learned study, the descriptive nature of the term Whisper Quiet is patent.  The only fanciful aspect of the mark is plaintiffs' strained effort to persuade the reader that there is something fanciful about the term Whisper Quiet.  Whirlpool's speculation to the PTO that Whirlpool's predecessor (KitchenAid) coined the phrase is now refuted by the record, which shows that the term has been ubiquitous in the English language, both in common speech and in commerce, throughout the twentieth century.  Plaintiffs' argument to the PTO that the mark "immediately tells the consumer nothing about the product" borders on the risible.  Their contention that the words whisper and quiet are arranged to create a "unique and fanciful composite mark," and that it takes "thought and imagination" to arrive at the goods, is hyperbolic, to say the least.  Contrary to plaintiffs' assertions, it takes no "mental gymnastics" to arrive at the meaning of the term.  The term Whisper Quiet, taken at face value, indicates that the appliance has the desirable characteristic of quietness.  It takes no imagination whatsoever to arrive at the concept of a quiet appliance, as the term itself leaves nothing to the imagination.   The term cannot even be stretched into a suggestive mark. The term "whisper" suggests quietness.  By adding the word "quiet," however, the suggestive nature is obliterated, as the word "quiet" unambiguously states that which the word "whisper" only suggests.

A descriptive mark is entitled to protection only upon a showing of secondary meaning or acquired distinctiveness. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 796 (1992).  Secondary meaning is the association in the public's mind between a product and its source which occurs when an inherently non-distinctive designation becomes distinctive of a particular product. *See Mishawaka Rubber & Woolen Mfg Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942). Whether a term has acquired secondary meaning is an issue of fact.  *See* 2 McCarthy on

-19-

TRADEMARKS, § 15:29.  The burden of proof is on the party claiming rights to the mark.  *Id.*; *see DeGidio v. West Group Corp.*, 355 F.3d 506, 513 (6th Cir. 2004).  "The evidentiary burden necessary to establish secondary meaning is substantial."  *DeGigio*, 355 F.3d at 513; *see Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir. 2004) ("'Proof of secondary meaning entails vigorous evidentiary requirements.'") (quoting *Boston Beer Co. Ltd P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181 (1st Cir. 1993)); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) (same) (quoting *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985)).  Where a defendant moves for summary judgment on this issue, plaintiff has the burden of coming forward with direct or circumstantial evidence of secondary meaning sufficient to raise a triable issue.  *See Herman Miller, Inc. v. Palazetti Imp. & Exp., Inc.*, 270 F.2d 298, 311-12 (6th Cir. 2001); *Echo Travel, Inc. v. Travel Assoc., Inc.*, 870 F.2d 1264, 1265-66 (7th Cir. 1989).

When defendants' motion for summary judgment challenged the lack of record evidence of secondary meaning in the market for clothes dryers, Whirlpool did not attempt to raise a triable issue of fact on the question whether the Whisper Quiet mark has developed secondary meaning for clothes dryers.  Although survey evidence is not absolutely required, it is often the most "direct and persuasive" indicium of secondary meaning.  *See Herman Miller*, 270 F.3d at 312; *see also U.S. Search, LLC v. US Search.com, Inc.*, 300 F.3d 517, 526 n.13 (4th Cir. 2002).  One would presume that a major appliance manufacturer using a mark continuously for two decades could easily document secondary meaning with direct evidence, *if* the mark had truly gained distinctiveness for its products.  Whirlpool has presented no such evidence.  A mark owner's failure to present direct evidence, such as consumer testimony or survey evidence, when it has the means to do so, gives rise to an inference against the existence of secondary meaning.  *See Security Ctr., Ltd. v. First Nat'l*

*Security Ctr.*, 750 F.2d 1295, 1300-01 (5th Cir. 1985) (lack of survey evidence an insurmountable hindrance in circumstances of that case); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985). Although survey evidence is not the only way to prove secondary meaning, and the lack of survey evidence is not necessarily fatal, *see Herman Miller*, 270 F.2d at 312-13, the fact remains that plaintiffs have proffered *no* direct evidence of secondary meaning.  The most that can be said is that Whirlpool has affixed the mark to many clothes dryers and has spent large sums in advertising to promote its products, using this and numerous other marks.  This is circumstantial evidence of a mark holder's *efforts* to create secondary meaning; it does not necessarily mean that those efforts have been successful.  *See Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1332 (8th Cir. 1985); *see also R. H. Donnelley, Inc. v. USA Northland Directories, Inc.*, No. Civ. 04-4144 JNE/SRN, 2004 WL 2713248, at * 3 (D. Minn. Nov. 19, 2004); *Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 70 (D.D.C. 2003) ("[E]ven though the mark owner may strive to create secondary meaning; it is the consuming public which, in effect determines whether that effort has succeeded.'") (quoting *Centaur Commc'ns Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987)).  For this reason, evidence of advertising has only an "attenuated link" to actual market recognition, *see Homeowner's Group*, 931 F.2d at 1108, and a large sales volume, although relevant, is not strongly probative.  *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes,* Inc., 871 F.2d 590, 596 (6th Cir. 1989); *Platinum Home Mortgage Corp. v. Platinum Fin. Group*, 149 F.3d 722, 729 (7th Cir. 1998) ("Evidence of advertising and sales is entirely circumstantial, and that evidence does not necessarily indicate that customers associate a

mark with a particular source, particularly when the advertisements and promotions do not specifically emphasize the mark.").

On the other side of the equation, defendants have presented survey evidence,[3] unanswered by plaintiffs, indicating that the Whisper Quiet mark is not recognized as an indicator of source and enjoys little consumer recognition for any laundry appliance.  In addition, as set forth in more detail in the Statement of Facts, Whirlpool has never used the Whisper Quiet mark alone, but utilizes it in a tertiary fashion, generally to identify a specific sound reduction system or the concept of quietness in general, and generally uses it with a plethora of other marks identifying other features of its products.  Although a trademark owner's use of the mark in connection with other trademarks does not disqualify the mark from protection, *see Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 154 (6th Cir. 1973), this is a factor in determining whether the mark has acquired secondary meaning.  The existence of a numerosity of marks covering a single product obviously makes it less likely that the public will associate any one mark with the goods. Finally, plaintiff's own expert concedes that Whisper Quiet is not well-known in the laundry market. (docket # 222, Ex. 40, Cogan Dep. at 172).  A reasonable jury could not rule, on the basis of the record evidence, in plaintiffs' favor on this issue.

In summary, plaintiffs are entitled to a summary judgment on the issue of the incontestability of the Whisper Quiet mark with regard to washing machines and dishwashers for

---

[3] Plaintiffs have criticized the expert reports of defendants' two survey experts on a number of grounds and, after the summary judgment hearing, filed a motion *in limine* to exclude the expert testimony.  Without prejudging the evidentiary issue, in this court's experience, litigants are rarely successful in excluding all of an expert's testimony.  Furthermore, even discounting defendants' survey evidence to zero, the record is devoid of any substantial evidence affirmatively showing secondary meaning.

purposes of 15 U.S.C. § 1114(a).  Regarding defendants' clothes drying machines, plaintiffs may predicate infringement on their incontestable mark, but must show likelihood of confusion under the related goods doctrine.  If plaintiffs seek to rest their infringement case on their use of the Whisper Quiet mark in regard to clothes dryers, plaintiffs bear the burden of proving secondary meaning, an issue upon which plaintiffs have failed to raise a triable issue of fact.  Defendant is therefore entitled to a summary judgment on the claim of infringement regarding clothes dryers under 15 U.S.C. § 1125(a).  As the Michigan common law also requires proof of secondary meaning, *see Montgomery Ward & Co. v. Ward Furniture & Appliance Co.*, 42 N.W.2d 747 (Mich. 1952); *Burke v. Dawn Donut Sys., Inc.*, 383 N.W.2d 98, 101-02 (Mich. Ct. App. 1985), defendants are entitled to summary judgment on this claim as well, as it relates to clothes dryers.  As a result of this ruling, plaintiffs will be allowed to proceed only on their claims under sections 32(1) and 43(a) of the Lanham Act and under Michigan common law arising from the alleged infringement of their incontestible mark for washing machines (and/or dishwashers).

> ### C.   Likelihood of Confusion

In the Sixth Circuit, a central inquiry in a trademark case is whether defendant's use of plaintiff's mark is "likely to cause confusion."  The court has identified eight factors relevant to this inquiry:

    (1)    the strength of plaintiff's mark;
    (2)    the relatedness of the goods or services;
    (3)    the similarity of the marks;
    (4)    the evidence of actual confusion;
    (5)    the marketing channels used;
    (6)    the likely degree of purchaser care;
    (7)    the defendant's intent in selecting the mark; and
    (8)    the likelihood of expansion of the product lines.

*Frisch's Restaurants*, 670 F.2d at 648; *accord Gibson Guitar Corp. v. Paul Reed Guitars, LP*, 423 F.3d 539, 548 (6th Cir. 2005).  These factors are simply a guide to help determine whether confusion would be likely to result from simultaneous use of the two contested marks.  "They imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) (*Wynn I*).  Where a jury has been demanded in a case for monetary relief, the existence of likelihood of confusion frames a factual question for the jury's determination. *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004).  However, summary judgment may nevertheless be appropriate if the record shows no genuine issue of material fact concerning the *Frisch* factors. *See id.* at 800.  Analysis of the *Frisch* factors under this standard demonstrates that summary judgment is not appropriate on this issue for either party.

1.     Strength of Mark

This factor focuses on the distinctiveness of the mark and its recognition among the public. *Home Owners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).  A mark is strong if it is highly distinctive, that is, if the public readily accepts it as the hallmark of a particular source. *Id.*  "The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

Whirlpool has not presented proofs tending to show that the Whisper Quiet mark is widely recognized among the consuming public.  Indeed, at least with regard to laundry products, Whirlpool admits that it aims its efforts at a rather narrow niche market of upscale consumers, and

that its sales of washing machines under the KitchenAid brand account for a small segment of the

market. Plaintiff's own expert has admitted that in the laundry equipment market the mark is "not

well known." (docket # Ex. 40, Cogan Dep. at p. 172). Nevertheless, Whirlpool relies on the

presumption that a trademark that has become incontestable must be deemed a strong mark, without

the need for any proof of consumer recognition. The rather recent Sixth Circuit decision in *Therma-*

*Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632 (6th Cir. 2002), rejects this position. In dismissing

the identical argument, the Sixth Circuit Court of Appeals held as follows:

> TSI's reliance upon this presumption is misplaced. Even where a trademark
> is incontestable and "worthy of full protection," the significance of its presumed
> strength will depend upon its recognition among members of the public. Treating a
> valid, incontestable trademark as an exceptionally strong mark for the purpose of
> determining whether confusion is likely to occur, without examining whether the
> mark is distinctive and well-known in the general population, would shift the focus
> away from the key question of "whether relevant consumers are likely to believe that
> the products or services offered by the parties are affiliated in some way."
> *Homeowner's Group*, 931 F.2d at 1107. Although a trademark may be "strong and
> worthy of full protection" because it is valid and incontestable, *Wynn Oil Co.*, 839
> F.2d at 1187, that does not necessarily mean that its strength is particularly relevant
> to the ultimate issue of whether confusion is likely to occur.
>
> TSI's trademark, although valid and incontestable, is not an especially strong
> mark. Not only is the mark descriptive, but it also lacks broad public recognition.
> As a result, this factor does not weigh strongly in TSI's favor.

295 F.3d at 632.

The teaching of *Therma-Scan* is that the validity of a mark and its strength for

purposes of determining likelihood of confusion are separate inquiries. By virtue of a mark's

incontestability, an alleged infringer is precluded from challenging the validity of the mark or from

asserting that a merely descriptive mark has not yet developed secondary meaning. *See Park 'N Fly*,

469 U.S. at 196. The strength of the mark, that is, its power to act as an indicator of origin to

identify and distinguish the source of goods, is another question.  *See Homeowners Group*, 931 F.2d at 1107-08 (even though arbitrary mark is inherently distinctive, it may have little customer recognition or "strength" in the market).  *Therma-Scan* teaches that treating a valid, incontestable mark as "an exceptionally strong mark" for the purpose of determining whether confusion is likely to occur, without examining whether the mark is actually distinctive and well-known in the relevant marketplace, is erroneous.  295 F.2d at 632.  Consequently, even though the mark involved in *Therma-Scan* was registered and incontestable, the Court of Appeals determined that it was "descriptive" for purposes of analysis of the likelihood of confusion and that it was "not an especially strong mark."  *Id.*

Whirlpool strenuously argues against this conclusion, asking the court to disregard the *Therma-Scan* decision because it allegedly conflicts with the earlier decision of the Court of Appeals in *Wynn I*, in which the court stated that "once a mark has been registered for five years, the mark must be considered strong and worthy of full protection."  It is unclear whether *Wynn I* and *Therma-Scan* are truly inconsistent.  The Sixth Circuit has always held that the presumption of strength of an incontestable mark is rebuttable when analyzing likelihood of confusion.  *See, e.g., AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004); *accord Aero-Motive*, 922 F. Supp. at 37 ("However, the presumption may be rebutted by demonstrating that the mark, while inherently distinctive, is nevertheless not distinctive in the marketplace due to acquired characteristics.").  *Therma-Scan* can be understood as merely a specific application of the rule that the presumption recognized in *Wynn I* is rebuttable.  To the extent there is any perceived conflict between the decisions, plaintiffs rely on the principle that one panel of the Court of Appeals may not overrule a decision of a prior panel of that court.  *See, e.g., United States v. Smith*, 419 F.3d 521, 532 (6th Cir.

-26-

2005).  This is a rule of comity and self-restraint exercised by judges of the Sixth Circuit Court of

Appeals.  It is not license for a lower court to ignore a recent, controlling decision of the Court of

Appeals, because the lower court may believe that it conflicts in some way with an earlier decision

of that court.  In essence, plaintiffs ask this court to overrule *Therma-Scan*, a suggestion that should

be an anathema to any conscientious trial judge.  It is the duty of the trial court faithfully to apply the

last pronouncement of the controlling appellate court on an issue.  Any other rule invites chaos.

Plaintiffs' position is made even more unconvincing by the fact that the *Therma-Scan* court, rather

than ignoring *Wynn I*, cited the case and explained its import.  The *Therma-Scan* court did not

purport to overrule *Wynn I*.  Consequently, this court is not at liberty to ignore or minimize the clear

holding of the Court of Appeals in *Therma-Scan*.[4]

    Despite the incontestability of the Whisper Quiet mark, this court is required to assess

the evidence to determine whether it is so compelling, either in favor of the strength of the mark or

against it, that no reasonable trier of fact could disagree.  The evidence does not point

unambiguously to the existence of a strong mark.  Whirlpool has not presented direct evidence,

through surveys or otherwise, of strong consumer recognition of the Whisper Quiet mark.

Defendants' survey evidence, by contrast, concludes that Whisper Quiet "has virtually no strength

as an indicator of source in major home appliances."  (Def. Ex. 30 at 2).  As indicated, the mark does

not identify a major brand, but is always used in conjunction with the KitchenAid brand or is used

---

[4] Furthermore, it is clear that any presumption flowing from incontestability applies only to the strength of the mark for products specified in the application. *See Aero-Motive*, 922 F. Supp. at 37.  An owner of a registered mark who claims that the mark is infringed by its use on a related product must proceed in the infringement analysis unaided by the presumption. *Id.*  Therefore, in no event would plaintiffs be entitled to rely on a presumption of strength in challenging defendants' use of the mark on clothes dryers.

to refer to the presence of a sound reduction system in KitchenAid brand appliances.  The mark is used together with a bewildering array of other marks identifying other features of the particular appliance, and, with regard to most appliance lines, never appears on the appliance itself.  The evidence concerning advertising expenditures is inconclusive, as it does not isolate expenditures for this particular mark.  Furthermore, evidence of advertising budgets has only an "attenuated link" to actual market recognition. *Homeowners Group*, 931 F.2d at 1108.  Although the incontestible status of the mark requires a presumption of some secondary meaning, the strength of the mark remains an open question.

### 2.      Relatedness of the Goods

The Sixth Circuit has articulated a sliding scale for evaluation of this factor.  If the goods of the parties complete directly, confusion is likely if the marks are sufficiently similar.  If the goods are not competitive but are "somewhat related," the likelihood of confusion will turn on other factors.  And if the goods are totally unrelated, confusion is unlikely. *Therma-Scan*, 295 F.3d at 632.

With regard to clothes washing machines, this factor must be deemed to weigh in favor of Whirlpool.  Defendants' clothes washing machines compete directly with those of the plaintiffs.  If parties' goods directly compete, confusion is likely if the marks are sufficiently similar. *See PACCAR, Inc. v. Telescan Tech. L.L.C.*, 319 F.3d 243, 251 (6th Cir. 2003).  With regard to clothes dryers, however, the result is not so clear.  Plaintiffs assert the existence of direct competition, because plaintiffs' clothes dryers compete with those of defendants.  Plaintiffs, however, have failed to establish the existence of a protectible trademark regarding clothes dryers.  Rather, as discussed above, plaintiffs' only viable claim is that clothes dryers are "closely related"

to those appliances for which Whirlpool holds an incontestable trademark.  Consequently, clothes

dryers must be deemed to fall within the second category identified by the Court of Appeals -- goods

that are "somewhat related but not competitive."  In the case of allegedly related goods, the Court

of Appeals has given the following guidance:

> However, services are "related" not because they coexist in the same broad industry,
> but are "related" if the services are marketed and consumed such that buyers are
> likely to believe that the services, similarly marked, come from the same source, or
> are somehow connected with or sponsored by a common company.  "The question
> is, are the [services] related to that they are likely to be connected in the mind of a
> prospective purchaser?"

*Homeowners Group*, 931 F.2d at 1109 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*,

319 F.2d 149, 159 (9th Cir. 1963)).

Beyond the bald assertion that clothes washing machines and clothes dryers are

"closely related," plaintiffs have not provided the court with substantive evidence, such as market

studies, consumer surveys, or expert testimony, tending to show that these products are marketed and

consumed such that buyers are likely to believe that washers and dryers, similarly marked, come

from the same source or are connected with a common company.  Obviously, the unsworn assertions

of counsel are not evidence.  *See Stone Motors Co. v. General Motors Corp.*, 293 F.3d 456, 467 n.6

(8th Cir. 2002).  The court could speculate on the basis of its own experience as a consumer with

such items, but such speculation is no substitute for proof.  Furthermore, although it appears that

clothes washing machines and dryers are sometimes purchased together as a "set" (for example, in

new construction), this is not invariably true.  The Sixth Circuit has cautioned that goods are not

related merely because they coexist in the same broad industry -- in this case, home appliances.  On

-29-

the present record, a jury might find that clothes washers and dryers are closely related, but a contrary finding would also be allowable.

The record is such that neither party is entitled to a summary judgment on this factor, which, as stated above, tends to be of little weight in the absence of directly competing goods.  The second factor therefore is neutral on the present record regarding clothes dryers, while it weighs in plaintiffs' favor with regard to washing machines.

### 3.  Similarity of the Marks

In evaluating the similarity of trademarks, it is axiomatic that side-by-side comparison is not the test.  *Homeowners Group*, 931 F.2d at 1109.  Rather, the marks must be viewed in their entirety and in context.  The court must determine, in light of what occurs in the marketplace, whether the mark would be confusing to the public when singly presented.  The overall impression of the mark, not an individual feature, is most important.  *Therma-Scan*, 295 F.3d at 633; *accord Homeowners Group*, 931 F.2d at 1109.

Consideration of this factor leads to mixed results.  Certainly, a side-by-side comparison of the words alone yields a conclusion that the words are identical.  The actual use of the marks, however, differs.  As noted, the Whisper Quiet mark appears on the console of KitchenAid washing machines and dryers in distinctive, "fade-away" letters. Plaintiffs' advertising catalogs, brochures, and other materials often feature the words Whisper Quiet, virtually always in relation to a sound reduction system, but presented in a standard typeface.  LG does not use the words Whisper Quiet in its advertising or promotion, but the words did appear on the consoles of their washing machines and dryers, along with a short list of other features.  The list of features

invariably appeared below the LG logo.  The Sixth Circuit has held that the prominent display of an alleged infringer's name or logo in connection with the accused mark reduces the likelihood of confusion.  *Therma-Scan*, 295 F.3d at 634.  In such circumstances, where the words of the mark are identical but the alleged infringer always uses its own name or logo as well, the "similarity of the marks thus increases the likelihood of confusion, although the presence of the [infringer's] names on [the alleged infringer's] products decreases the significance of this factor."  *Id.* at 634.

Indeed, a reasonable trier of fact would be entitled (but not compelled) to conclude that defendants did not use the words Whisper Quiet in a trademark sense at all.  Whether alleging infringement of a registered trademark under 15 U.S.C. § 1114(1), or of an unregistered trademark under 15 U.S.C. § 1125(a), a plaintiff must show that the defendant "has also used the same or similar designation *as a trademark*."  *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).  A trademark use creates "a separate and distinct commercial impression, which . . . performs the trademark function of identifying the source of the merchandise to the customers."  *Id.* (quoting *In re Chemical Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed. Cir. 1988)).  It is not obvious that LG used the words Whisper Quiet in the trademark sense.  As noted, they appeared only on product consoles with the more prominent "LG" logo and were listed with a number of other features, some of which (*e.g.*, Stainless Steel Drum, Ultra Capacity) were generic statements of product features that could not possibly serve as an indicator of source.  Other markings on the consoles were trademarks.  The evidence is ambiguous.  A jury could find that the

use of Whisper Quiet by defendants was merely descriptive of a desirable product feature (unusual quietness) and not a trademark use at all.[5]

4.    Evidence of Actual Confusion

The Sixth Circuit has held that evidence of actual confusion is undoubtedly the best evidence of a likelihood of confusion. *Daddy's Junky Music Stores*, 109 F.3d at 284. Plaintiffs need not, however, demonstrate actual confusion to recover for trademark infringement. *Wynn I*, 839 F.2d at 1188. Where the parties have been engaged in concurrent sales under their respective marks over an extended period of time, and only isolated instances of confusion are documented, this fact may lead to an inference that no likelihood of confusion exists. *See Therma-Scan*, 295 F.3d at 634; *Homeowners Group*, 931 F.2d at 1110; *Aero-Motive*, 922 F. Supp. at 41.

This factor weighs heavily against a finding of likelihood of confusion. As noted in the Statement of Facts, defendants' products have been in the marketplace for over two years, sometimes appearing in the same retail stores as plaintiffs' products. If the appearance of the words Whisper Quiet on the consoles of defendants' clothes washers and dryers had a capacity to induce consumer confusion, one might reasonably expect evidence of actual confusion to have arisen. The record, however, is devoid of any evidence of actual confusion. A jury would be entitled to infer from this fact that the plaintiffs' trademark use of the words Whisper Quiet (in a tertiary fashion, always accompanied by stronger marks) and defendants' use of the same words (appearing on consoles only, always accompanied by the LG logo, and arguably used in a merely descriptive way) poses no real likelihood of confusion for a reasonably careful purchaser. Contrary to plaintiffs'

---

[5] This infringement issue is closely related to the affirmative defense of fair use discussed in section II of this opinion.

suggestion, the lack of evidence of actual confusion is not "insignificant" in the circumstances of this case. Rather, in circumstances in which one might reasonably expect to find actual confusion in the marketplace, confusion that is brief, sporadic, or nonexistent may lead to a fair inference that no likelihood of confusion exists. *Therma-Scan*, 295 F.3d at 634. In such circumstances, this factor is entitled to be weighed "more heavily." *Aero-Motive*, 922 F. Supp. at 41. Lack of evidence of actual confusion is not significant only where the circumstances indicate that such evidence should not reasonably be available. *See PACCAR*, 319 F.3d at 252. Where, as here, concurrent sales under the respective marks for a substantial period of time has existed, the lack of evidence of actual confusion "can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

### 5.    Sophistication of Consumers

In gauging the likelihood of confusion, the focus must be on the typical consumer exercising ordinary care. *See PACCAR*, 319 F.3d at 253. The circumstances in which the hypothetical consumer is making his or her choice also play a significant role. When purchasing expensive goods, consumers may be expected to exercise a greater degree of care. *Id.* Of course, interaction of this factor with other relevant factors may produce varying results in different marketplace situations. For example, if the marks are identical, purchaser care may decrease the likelihood of confusion only minimally. *Id.* at 254.

This factor would appear to weigh against the finding of likelihood of confusion. Both clothes washers and dryers are relatively expensive purchases for the typical consumer, who would be expected to exercise a greater degree of care because of this circumstance. Additionally,

both plaintiffs and defendants market their products to an upscale niche of consumers (a group that plaintiffs characterize as "home enthusiasts"), who are interested in more feature-laden and expensive appliances.  (*See* docket # 211, Ex. 9, Maynard Dep. at 91).  It may be expected that consumers purchasing goods in the premium appliance category would exercise even more caution than the average consumer and would accompany their buying decision by independent research (such as reference to *Consumer Reports* or other guides), rather than making an impulse purchase on the showroom floor on the basis of a trade name.  *See Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 422 (6th Cir. 1999) ("The high cost of [home septic systems] -- and of installing a home septic system in general -- are likely to induce great care even in the non-expert homeowner.").

In attempting to downplay the importance of this factor, plaintiffs assert that the sophistication of consumers may increase the likelihood of confusion, on the theory that their "very awareness of status brand names and designs may make them more vulnerable to confusion." *See Krueger Int'l, Inc. v. Nightingale, Inc.*, 915 F. Supp. 595, 611 (S.D.N.Y. 1996).  This argument presupposes some evidence that sophisticated consumers, when seeing the words Whisper Quiet, would think of KitchenAid appliances.  Plaintiffs, however, have presented no evidence tending to support such a conclusion.  As noted above, the record is virtually devoid of any evidence showing consumer identification of this mark with KitchenAid products.  Although plaintiffs' argument would be compelling in an appropriate case, plaintiffs have failed to establish a factual predicate for such a conclusion.  Rather, plaintiffs make the bald and unsupported assertion that "the sophisticated consumer who is more knowledgeable of brand names is therefore likely to be aware of KitchenAid

and its "Whisper Quiet" brand appliances. . . ." (Plf. Brief, docket # 195, at 21).[6]  Arguments of

counsel, however, are no substitute for proof.  *See Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*,

200 F.3d 795, 812 (Fed. Cir. 1999); *Anderson v. Greene*, No. Civ. 05-0393-WS-M, 2005 WL

1971116, at * 7 n.7 (S.D. Ala. Aug. 16, 2005) ("The Court cannot simply accept counsel's

unadorned representations as evidence.").  In the absence of any evidence showing sophisticated

consumers are apt to recognize Whisper Quiet as a KitchenAid mark, this factor must be deemed to

weigh against a finding of likelihood of confusion.

### 6.      Marketing Channels

This factor requires an analysis of the parties' predominant customers and their

marketing approaches.  *Therma-Scan*, 295 F.3d at 636.  This factor tends to support a finding of

likelihood of confusion.  The record demonstrates that both parties operate in the same market and

that they indeed both target their efforts towards the upscale segment.  They use the same advertising

channels and tend to sell their products through the same retail establishments.

### 7.      Defendants' Intent in Selecting Its Mark

An alleged infringer's intent to palm off its goods as those of the trademark owner

or to otherwise deceive the consuming public can lead to a finding of likelihood of confusion,

although lack of such bad intent does not tend to negate a likelihood of confusion, where it otherwise

exists.  *See PACCAR*, 319 F.3d at 254; *Wynn I*, 839 F.2d at 1189.  The evidence produced by the

parties diverges sharply on this issue.  Plaintiffs point to evidence concerning LG's preparation to

---

[6] As noted more than once in this opinion, it is a gross exaggeration to say that Whisper Quiet
is a brand of appliances.

enter into the United States appliance market.  Plaintiffs assert that LG did not request a trademark search concerning the Whisper Quiet mark or consult with an attorney before deciding to use the words.  (docket # 211, Ex. 26, Noh Dep. at 60-62).  Plaintiff also contends that defendant has admitted that it does not have a policy of respecting valid trademark rights of other companies. (docket # 211, Ex. 29, Kim Dep. at 24).  Defendants strenuously contest this characterization of the evidence.  For its part, defendants assert that their officers believed that Whisper Quiet was a generic term, open for anyone to use.

On the present record, resolution of the question of intent raises issues of credibility inappropriate for resolution on summary judgment.  The Sixth Circuit routinely holds that questions of intent are generally for the jury's determination, unless the evidence is so strong in one party's favor that a reasonable trier of fact could come to but one conclusion.  *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001).  This is not such a situation.

### 8.     Likelihood of Expansion of Product Lines

This factor is directed to the situation in which the likelihood of confusion, although not patent at present, will increase in the future because of product line expansion.  The effect of this factor is ambiguous on the present record.  Plaintiffs sell every conceivable major home appliance under the KitchenAid brand and use their Whisper Quiet mark in the promotion of each appliance line, even when the mark is not used on the face of the appliance.  The evidence indicates that defendant LG has only used the words Whisper Quiet on the consoles of its clothes washers and dryers and has not used the term in connection with any other appliance.  Furthermore, LG stopped manufacturing machines bearing the words Whisper Quiet shortly after plaintiffs lodged an

objection.  Although defendants' witness testified that it would reserve the right to resume use of the words at some future date if the court held in defendants' favor, there is no evidence of defendants' actual intent to do so.  (*See* docket # 234, Ex. 69, Noh Dep. at 237).  Consequently, the evidence does not clearly support a finding that defendant intends to use the words Whisper Quiet on its clothes washers and dryers, let alone to expand the use to other product lines.  On the present record, this factor must be deemed ambiguous and not entitled to serious weight.

In summary, the record evidence presents a jury issue on the question of likelihood of confusion, both with regard to clothes washers and dryers.  The "pivotal issue" of likelihood of confusion is uniquely amenable to jury resolution, as the jury is itself a cross-section of consumers, well suited to evaluating whether an ordinary consumer would likely be confused.  *See Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 317 (4th Cir. 1992).  Even where one or more of the *Frisch* factors is fairly established on the record, other factors may be undetermined, and the interaction of all relevant factors therefore remains an open question.  *See, e.g., AutoZone*, 373 F.3d at 800-01.  Summary judgment is appropriate only if a jury could not reasonably find for the nonmoving party.  *Id.* at 792.  As reasonable minds could differ on the question of likelihood of confusion, neither party is entitled to summary judgment.

## II.     Fair Use Defense

LG has asserted a number of affirmative defenses to Whirlpool's claim of infringement.  The principal defense is fair use. (docket # 150, Third Am. Ans., ¶ 38).  Plaintiffs and defendants have filed cross-motions for summary judgment on this issue.  For the reasons set forth below, the cross-motions will be denied.

Fair use is a defense to liability under the Lanham Act.  Section 33(b)(4) of the Lanham Act defines fair use as

> a use, otherwise than as a mark, of . . . a term or device which is descriptive of and fairly used and in good faith only to describe the goods or services of [a] party. . . .

15 U.S.C. § 1115(b)(4).  The defense permits others to use protected marks in descriptive ways, but not as marks identifying their own products.  *See PACCAR*, 319 F.3d at 255; *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).  The Supreme Court has held that some possibility of consumer confusion about the origin of goods is compatible with fair use of a mark.  *K.P. Permanent Makeup v. Lasting Impression I, Inc.*, 125 S. Ct. 542, 550 (2004).[7]  To establish this defense, an alleged infringer must prove that it used the term descriptively and not as a trademark and that it acted fairly and in good faith.

In the context of this case, many of the court's findings and conclusions with regard to plaintiffs' *prima facie* case bear strongly on the fair use defense.  The court will therefore not reiterate at length findings already made, but will emphasize the facts and authorities that bear on the fair use defense.

The first issue is whether defendant used the term descriptively and not as a trademark.  These questions are really two sides of the same coin.  As the Supreme Court has noted, even an incontestable registered trademark does not deprive other commercial speakers of the ordinary utility of descriptive words.  *K.P.*, 125 S. Ct. at 550.  The owner has an exclusive right to use the words of the mark not in their original, descriptive sense, but only in the secondary one

---

[7] To this limited extent, *K.P.* overruled Sixth Circuit authority, such as *PACCAR, Inc. v. Telescan Tech. LLC*, 319 F.3d at 255-56, which held that likelihood of confusion precludes the fair use defense as a matter of law.

associated with the mark holder's goods. *Id.* The fair use defense therefore allows other commercial speakers to use words in an effort to accurately describe their own products, even if the same words are used by a trademark owner to designate the source of its goods. Contrary to plaintiffs' argument, the fair use doctrine is not limited to cases involving trademarks properly classed as descriptive, as opposed to suggestive, fanciful, or arbitrary. *See Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995) (labeling plaintiff's argument as "misguided"). Focus is not on the nature of plaintiffs' mark, but defendants' use of the words. "What matters is whether defendant is using the protected word or image descriptively, and not as a mark." *Id.* "Regardless whether the protected mark is descriptive, suggestive, arbitrary, or fanciful as used in connection with the product or service covered by the mark, the public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner." *Id.*

This court has already found that plaintiffs' Whisper Quiet mark is clearly descriptive. The focus for the fair use defense, however, is on defendants' use of the words. Without doubt, the words whisper quiet do have descriptive import, especially when used in reference to machinery in a home. Defendants have produced evidence showing that the words whisper quiet had been used descriptively in the home appliance market for 70 years, often with regard to devices, such as fans and air conditioners, which are notoriously noisy. The question is whether LG's placement of these words on the consoles of its clothes washers and dryers conveyed to the public information about the quiet operation of LG's products or, contrarily, was used in a way that would be perceived by the consumer as an indicator of source.

As this court has already remarked, a reasonable jury could find that defendants did not use the words whisper quiet in a trademark sense. Each party has focused upon selective aspects of the words Whisper Quiet on LG's consoles in an effort to persuade the court of the correctness of its position. In the court's view, the evidence is fairly susceptible of a finding of either descriptive use or trademark use. The consoles of clothes washing and drying machines, at least as they appear in the exhibits before the court, are full of markings. Some (*e.g.*, "KitchenAid", "LG") are obviously trademarks, designed to identify source. At the other end of the spectrum, some markings ("Extra Capacity," "Heavy Duty," "Five Cycles") are obviously descriptive and have no capacity to identify source but are clearly intended to inform the consumer of product features. The words Whisper Quiet appear on the console of LG machines, under the LG logo, as one of four listed items, some of which (Stainless Steel Drum) are obviously descriptive and others of which (Sense-Dry) appear to be used in a trademark sense. Plaintiffs make much of the fact that the "stack" of words is set off to one side, but plaintiffs' own consoles tend to emphasize and set off terms that are clearly descriptive. (*See, e.g.*, docket # 211, Ex. 2-D at P646, in which the words Three-Speed, Extra Capacity, and Heavy Duty are all set off from other terms). A jury might conclude that words placed on the body of an appliance tend to indicate source because of their prominence. Given the context of the words Whisper Quiet as they actually appear on the consoles of LG's products, surrounded by trademark terms, non-trademark terms, and everything in between, a jury would also be entitled (but not compelled) to find that the use is descriptive of a product feature.[8]

---

[8] The record shows that Whirlpool has aggressively policed the Whisper Quiet mark, even in situations in which the use of the words whisper quiet by another manufacturer was clearly descriptive. For example, Whirlpool sent a cease-and-desist letter to Thor Appliances for its use of the words in the following sentence: "Whisper quiet operation on both wash and dry cycles offers peace and quiet throughout the home." (docket # 211, Ex. 1-R). Whirlpool also objected to the use

Fair use analysis also requires a finding that defendants used the protected mark in good faith, an issue upon which defendant bears the burden of proof.  The principal focus is whether the junior user intended to trade on the good will of the trademark holder by creating confusion as to source or sponsorship.  *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 66 (2d Cir. 2000).  This question, in turn, is impacted by the likelihood of confusion analysis.  *Id.*  When considering the likelihood of confusion and assessing the similarity of the two marks, a court must take into account the overall context in which the marks appear and the totality of factors that can cause consumer confusion.  *See Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993).

As the court has found in section I of this opinion, the evidence of LG's intent in using the words Whisper Quiet is inherently factual and is not susceptible of resolution by summary judgment motion on the present record.  Each party points to facts and inferences favorable to it in requesting a summary judgment in its favor.  For example, defendants point to the principle that an infringer's display of its own name or trademark in conjunction with the mark it allegedly infringes is evidence of good faith.  *See Cosmetically Sealed*, 125 F.3d at 30.  Defendants also point to testimony from their responsible officials regarding the decision to use the words Whisper Quiet, to the effect that they considered the words to be completely descriptive and open to use by anyone.  In response, plaintiffs focus on the fact that Mr. Noh visited appliance stores in the United States and

---

of the words whisper quiet in an Internet listing for a Kenmore refrigerator: "Enjoy the convenience of these new intelligent, feature-packed refrigerators that are energy efficient, whisper quiet, and designed to respond to your exact requirements." (docket # 242, Rose Aff., ¶ 2, and Ex. A).  Neither of these uses can possibly be construed as a trademark use.  Consequently, Whirlpool's opinion concerning the difference between descriptive use and trademark use of words is entitled to no weight.

must have seen the words Whisper Quiet on plaintiffs' goods.  Plaintiffs also point to alleged discrepancies in the testimony of defendants' employees concerning the meeting at which the decision to use the words was made.  They also rely on the lack of a trademark search and other indicia of lack of due care before LG decided to use the words.  Further, plaintiffs point to the availability of similarly descriptive terms, such as "quiet operation," available to defendants.  Each party asks the court to view facts in isolation, draw inferences in favor of that party, and essentially determine the question of LG's intent as a matter of law.  Such subjective issues of fact are rarely appropriate for resolution by summary  judgment.  *See American Int'l Group, Inc. v. London Am. Int'l Corp., Ltd.*, 664 F.2d 348, 353 (2d Cir.1981) (reversing summary judgment on fair use defense).  The court determines that both prongs of the fair use defense involve unresolved, material issues of fact for the jury's determination.  Consequently, both parties' motions for summary judgment on the fair use defense will be denied.

### III.    Other Affirmative Defenses and Defendants' Counterclaim

Plaintiffs have moved for summary judgment on all affirmative defenses and on each count of the counterclaim.  (The counterclaim is brought on behalf of LG Electronics U.S.A., alone. This opinion, for purposes of consistency, will continue to refer to "defendants," but the reader should bear in mind that all rulings regarding the counterclaim relate only to that defendant.) Defendants complain about the necessity of this motion, indicating that the core issues are the scope of plaintiffs' trademark rights, the likelihood of confusion, and the validity of the fair use defense. On this basis, defendants accuse plaintiffs of injecting undue complexity into this case.  Defendants' criticisms would seem sensible, but for the fact that defendants themselves have managed to plead

fourteen affirmative defenses and nine separate counterclaims arising from the facts of this case. Many of the affirmative defenses and counterclaims merely comprehend issues inherent in any trademark infringement matter and truly add nothing substantive to the case. Defendants therefore cannot blame plaintiffs for the proliferation of issues or for plaintiffs' understandable desire to clear away some of the undue complexity caused by the pleadings.

Because many of the counterclaims and affirmative defenses relate directly to the existence or absence of a *prima facie* case, the court will not repeat its previous findings and conclusions. Furthermore, in response to plaintiffs' motion, defendants have withdrawn several of their affirmative defenses, which will therefore not be treated substantively. Only those issues not previously dealt with in this opinion will be accorded substantive attention.

### A.     Failure to State A Claim

LG's first affirmative defense (docket # 150, Third Am. Answer at 5, ¶ 34) is that the complaint fails to state a claim upon which relief can be granted. The first amended complaint is certainly sufficient under notice pleading requirements to state a claim for a trademark infringement under federal law and unfair competition under Michigan law. Plaintiffs' motion will be granted with regard to this defense.

### B.     No Likelihood of Confusion

The second affirmative defense (docket # 150, at 6, ¶ 35) alleges that defendants' use of Whisper Quiet causes no likelihood of confusion. This is not an appropriate affirmative defense, but constitutes part of plaintiffs' *prima facie* case. As noted above, the existence of genuine issues of material fact precludes summary judgment on this question. To clarify the nature of the remaining

issues, however, the court will strike paragraph 35 of the third amended answer as an inappropriate affirmative defense.

C.    Whirlpool's Descriptive Use of the Mark

Defendants' third affirmative defense, asserted in paragraph 36 of the third amended answer (docket # 150, at 6, ¶ 36), alleges that the words Whisper Quiet are descriptive and that Whirlpool uses those words in their descriptive sense and not as a trademark.  In their motion for summary judgment, plaintiffs have demonstrated that their right in the Whisper Quiet trademark, with reference to dishwashers and clothes dryers, has become incontestible.  Under the *Park 'N Fly* decision, an incontestible mark cannot be challenged as merely descriptive or on the ground that it lacks secondary meaning.  469 U.S. at 196.  Consequently, as it relates to products for which plaintiffs hold an incontestible mark, this affirmative defense is patently meritless.

In response to plaintiffs' motion, defendants assert that the affirmative defense is directed at two issues.  With regard to dishwashers and clothes washers, defendants concede that the validity of the mark is incontestible, but seek to contest its strength on the issue of likelihood of confusion, as allowed by *Therma-Scan*.  With regard to other products, defendants assert that the words Whisper Quiet have not attained secondary meaning.  As thus recast by defendants, the third affirmative defense becomes meaningless.  The incontestible nature of the mark precludes defendants from prevailing on the affirmative defense, with regard to dishwashers and clothes washers, as a matter of law.  Rather than conceding this fact, defendants attempt to transmute the defense into a challenge to plaintiffs' ability to prove certain elements of their *prima facie* case.  The court has already ruled that plaintiffs have failed to raise a triable issue of fact with regard to the

acquisition of secondary meaning for any product other than those covered by the incontestible trademark registration.  The court has also ruled that defendants will be allowed to present proofs concerning the strength of the mark.

The third affirmative defense, set forth in paragraph 36 of the third amended answer, is insufficient as a matter of law regarding dishwashers and clothes washing machines and redundant and unnecessary with regard to any other issue.  This affirmative defense will therefore be stricken.

### D.   Genericness

Paragraph 37 of the affirmative defenses alleges that the words Whisper Quiet are generic for Whirlpool's products.  (docket # 150, at 6, ¶ 37).  Count VI of the counterclaim seeks a declaration on the same basis.  Defendants have withdrawn this defense and counterclaim, which will be stricken.

### E.   Fair Use

Paragraph 38 of the third amended answer (docket # 150, at 6, ¶ 38) asserts the affirmative defense of fair use, and count I of the counterclaim seeks a declaration of fair use.  As noted above, neither party is entitled to summary judgment on the fair use defense.  Plaintiffs' motion will be denied on this ground.

### F.   Abandonment and Estoppel

Paragraphs 39, 40 and 41 of the affirmative defenses (docket # 150, at 6, ¶¶ 39-41), and count V of the counterclaim (docket # 150, at 17) allege abandonment of plaintiffs' trademark for failure to enforce.  LG has withdrawn this defense and counterclaim, which will be stricken from the pleadings.

G.    Laches

Defendants have also asserted the equitable defense of laches.  (docket # 150, at 6, ¶ 42).  Defendants could not possibly maintain such a defense on the basis of plaintiffs' delay in objecting to the use of the words Whisper Quiet by defendants in connection with clothes washers and clothes dryers.  When plaintiffs moved for summary judgment on this defense on the basis of their almost immediate objection to the use of the words Whisper Quiet on laundry machines, defendants pointed instead to plaintiffs' acquiescence in the use of the words on noncompeting goods, such as air conditioners.

Inequitable delay in asserting trademark rights is a recognized defense to a request for injunctive relief.  *See Herman Miller, Inc. v. Palazetti Imp. & Exp., Inc.*, 270 F.3d 298, 321-22 (6th Cir. 2001).  A party asserting laches bears the burden of showing (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it.  *Id.* at 320.  In the present case, the record shows that beginning in 1995, LG began to use the words Whisper Quiet on the packaging of air conditioners, dehumidifiers, and vacuum cleaners.  Defendants have produced documents from Whirlpool's records (docket # 220, Ex. 25) showing that Whirlpool was aware of this use, at least with regard to air conditioners, as early as 1996.  As noted above, plaintiffs have been extremely aggressive in policing this mark, yet for reasons that do not appear on the record, no enforcement efforts were initiated with regard to LG's previous use of the mark.  Whirlpool now attempts to explain away its failure to act by indicating that the products sold by LG in the 1990's were not competitive, but this explanation remains unsatisfying in light of Whirlpool's aggressive stance against other manufacturers of noncompetitive goods, such as garbage disposers.  (*See* docket # 211, Ex. 1-U).  The record does not conclusively negate a finding that Whirlpool was

-46-

at least lacking in diligence in asserting its rights against LG.  Furthermore, defendants have an arguable case of prejudice, in that Whirlpool waited until its mark became incontestable before raising the issue with LG.

The evidence concerning laches is not so one-sided that one party must prevail as a matter of law.  This will be an issue for the court to determine in deciding whether Whirlpool should be granted injunctive relief, if it establishes infringement.  Whirlpool's motion for summary judgment on this defense will be denied, and the issue will be reserved for a post-trial evidentiary hearing, should the jury find in plaintiffs' favor on the underlying infringement claim.

H.    Fraud on the PTO

Paragraph 43 of the affirmative defenses (docket # 150, at 6, ¶ 43), and count VIII of the counterclaim (docket # 150, at 18) allege that plaintiffs procured registered trademark no. 1,698,772 by means of fraud on the Patent and Trademark Office.  Defendants' allegations of fraud arise from alleged misrepresentations made by Whirlpool in the process of applying for and receiving registration for the Whisper Quiet mark.  The counterclaim identifies the following representations as fraudulent:  (1) that Whisper Quiet is not a common or merely descriptive name or feature of applicant's goods (¶ 29); (2) that Whisper Quiet is a mark believed to be coined by applicant and is not believed to be a term in common usage (¶ 30); that dishwashers and clothes washers do not whisper (*id.*); and that the mark referred to dishwashers and clothes washers and not to a feature thereof (¶ 32).  Additionally, defendants allege that Whirlpool's 2002 renewal affidavit fraudulently attached a picture of a clothes dryer and not a clothes washer (¶¶ 44-46).

-47-

15 U.S.C. § 1120 imposes civil liability for the fraudulent registration of a trademark. Fraud and procurement of a trademark registration may also be raised defensively in civil litigation as a ground for cancellation in response to a claim of trademark infringement.   15 U.S.C. § 1115(b)(1); *see Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir. 1959).   In order to prevail on such a claim or defense, the alleged infringer must show false representation of a material fact, knowledge of its falsity, and intent to induce reliance on the misrepresentation. *Benton Prod. Ent., Inc. v. Motion Media*, No. 96-6044, 1997 WL 603412 at * 3 (6th Cir. Sept. 30, 1997).   To prevail in an affirmative action, the claimant must also show damages.   *Id.*   To prove fraud in the procurement of a registration, the proponent must show that the applicant made knowingly false or misleading statements in the application.   *Id.*[9]   The courts impose a burden of proof on the party alleging the fraud to do so by clear and convincing evidence.   *See Orient Express Trading Co., Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 652 (2d Cir. 1988).

Many of defendants' allegations of fraud do not involve matters of fact.   Defendants allege fraud arising from plaintiffs' failure to concede in their trademark application that the term Whisper Quiet was generic and its assertions that the mark was fanciful and not descriptive.   These are matters of characterization and opinion, not fact.   To the extent that defendants are arguing that Whirlpool failed to disclose the fact of prior use by others, defendants' allegations are legally insufficient, because they presuppose a duty that the law does not recognize.   A registration applicant has no duty to investigate and report to the PTO all other possible users of the same or similar mark.

---

[9] A defendant who raises a successful fraud defense succeeds only in cancelling the registration and thereby prevents the trademark owner from relying on the benefits of registration. The trademark owner's common-law rights in a mark and rights under section 43(a) of the Lanham Act continue unabated.  5 MCCARTHY ON TRADEMARKS, § 31:60.

*See Money Store v. Harriscorp. Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982).  Only in the rare circumstance that another user of the same mark has rights that are "clearly established," must this use be disclosed.  *See Russo & Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983).  Rights are only considered "clearly established" if they have been determined by court decree, a settlement agreement, or a trademark registration.  *Id.*  In most cases, the registration applicant has no obligation to report other users.  If an applicant has a good-faith belief that it is the senior user, then the oath cannot be fraudulent.  5 McCarthy on Trademarks, § 31:77.  In the present case, there is no evidence that any other party had clearly established rights in the mark at the time of the application.  The fact that other parties had been using the words whisper quiet, either in common speech or in commerce, did not disable Whirlpool from attempting to show that the words had acquired secondary meaning for KitchenAid dishwashers and washing machines.  Although Whirlpool's arguments to the PTO in this regard may have been weak, by no stretch of the imagination can they be considered fraudulent.

The closest thing to a factual representation alleged by plaintiffs is the assertion in the application that Whirlpool believed that it had coined the term whisper quiet.  It is now clear that the words were used in both literature and commerce long before the date of the application.  The application did not, however, categorically state that Whirlpool or its predecessor had coined the term, but merely that Whirlpool believed that fact to be true.  Where an application oath is phrased in terms of a "belief" of the applicant, this precludes a definitive statement by the applicant  that could ordinarily be used to support a charge of fraud.  *See Sovereign Order of St. John v. Grady*, 119 F.3d 1236, 1241 (6th Cir. 1997); 5 McCarthy on Trademarks, § 31:71.  The oath only requires a subjective, honestly held, good-faith belief.  *See San Juan Prods., Inc. v. San Juan Pools of*

*Kansas*, 849 F.2d 468, 472 (10th Cir. 1988).  There is no evidence to show that Whirlpool did not

in fact believe that it or its predecessor had coined the term.  Consequently, defendants cannot show

*scienter*.  Also, they cannot show materiality.  It is not necessary for a trademark applicant to have

coined a descriptive term.  The applicant is only required to show that the term has acquired a

secondary meaning for the applicant's products.[10]

    The remaining allegations of fraud may be easily dispatched.  Whirlpool's obviously

accidental attachment of a picture of the console of a clothes dryer (for which the trademark was not

registered) instead of a clothes washer could not possibly have been fraudulent.  Defendants have

not shown that this mistake was motivated by any intent to deceive.  Furthermore, when the error

was brought to the attention of the PTO, the PTO allowed Whirlpool to correct the record, showing

that the mistake was not material.  (*See* docket # 211, Rose Aff., ¶¶ 13-14 and Exs. 1-N, 1-M).

Finally, Whirlpool's representation that the Whisper Quiet mark was used continuously in commerce

with regard to dishwashers and clothes washing machines (as opposed to sound reduction systems)

was not fraudulent.  The record clearly shows that Whirlpool has used the mark with regard to all

of these things.  At the time of the initial application, Whirlpool had affixed the mark to the consoles

of many thousands of its appliances.  The mark therefore had been used continuously in commerce

with regard to these items.  Whirlpool had also used the mark, in an unregistered fashion, in

advertising its sound reduction systems.  The attachments to Whirlpool's application clearly

---

[10] Defendants' allegation that Whirlpool attempted to defraud the Trademark Office by representing that "dishwashers do not whisper" borders on the ridiculous.  The statement was made in the context of an argument attempting to show that the term "whisper quiet" was suggestive or fanciful, an argument that the PTO never accepted.  Defendants do not attempt to show how any reasonable examiner could have been misled by this argument.  (*See* Transcript of 7/27/04, docket # 155, at 32-44).

-50-

disclosed both kinds of uses.  The words Whisper Quiet were shown on product consoles, as well as in text referring to sound reduction systems.  (*See* docket # 211, Ex. 1-F).  This diffuse and confusing use of the mark bears on its strength, likelihood of confusion, secondary meaning, and other issues.  It does not make fraudulent the true statement that Whirlpool had indeed used the mark in connection with its dishwashers and clothes washing machines.

Both the courts and the commentators have decried the routine allegation of fraud in trademark cases.  *See, e.g., E-Cash Tech., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1149-1150 (C.D. Cal. 2001); 5 MCCARTHY ON TRADEMARKS, § 31:77 at 31-143.  Like most allegations of fraud in this area, defendants' assertions are weak and ill-founded.  The court will enter a summary judgment in favor of plaintiffs on paragraph 43 of the affirmative defenses and count VIII of the counterclaim.

I.       Abandonment Arising from Non-Use

Paragraphs 44, 45, and 46 (docket # 150, at 6-7, ¶¶ 44-46), as well count IV of the counterclaim (docket # 150, at 17), present a common theme.  They are all based upon the assertion that Whirlpool does not use the words Whisper Quiet to identify goods, but rather to identify sound reduction systems for such goods.  Specifically, paragraph 44 of the third amended answer alleges that Whirlpool's trademark registration for Whisper Quiet is invalid on this basis.  As noted repeatedly throughout this opinion, Whirlpool's rights in the registered trademark are now incontestible except for those defenses allowed by 15 U.S.C. § 1115(b).  Defendants' challenge to the validity of the mark on the grounds set forth in paragraph 44 is therefore precluded as a matter of law.

Paragraph 45, a variation on the theme, alleges that Whirlpool does not have trademark rights in the words Whisper Quiet because it uses those words to refer to sound reduction systems and not for the product itself.  Paragraph 45 goes on to allege that Whirlpool does not have trademark rights in the Whisper Quiet mark relating to sound reduction systems, either by registration or through the acquisition of secondary meaning.  This affirmative defense is a lovely example of setting up a straw man and then demolishing it.  As noted previously, Whirlpool has used the Whisper Quiet mark *both* to identify its products *and* in connection with sound reduction systems.  Whirlpool is not basing its claims in this case on any trademark rights for the mark relating to sound reduction systems.  Therefore, Whirlpool is not required to prove secondary meaning.  The only claim upon which Whirlpool will be allowed to proceed at trial is that defendants' use of the words Whisper Quiet on the consoles of their washing machines and dryers infringes Whirlpool's incontestible mark.  Defendants have not cited any statutory or case law authority that provides an alleged infringer a defense on the basis of the convoluted concept set forth in paragraph 45.

In a third variation on the theme, paragraph 46 alleges that Whirlpool is not entitled to relief because Whirlpool has failed to plead that the words Whisper Quiet have acquired secondary meaning for sound reduction systems.  Whirlpool has indeed not made such an allegation, nor is one necessary for it to prevail.

Count IV of the counterclaim packages the foregoing amorphous concepts into a request for declaratory judgment of absence of trademark rights.  Under the facts of this case, count IV, like the related affirmative defenses, is legally and factually meritless.  Judgment will be entered in favor of plaintiffs on these three defenses and count IV of the counterclaim.

I.      Unclean Hands Defense

Paragraph 47 of the affirmative defenses (docket # 150, at 7, ¶ 47) asserts an unclean hands defense to plaintiffs' claim for injunctive relief.  Defendants assert three grounds supporting their allegation of unclean hands:  (1) misrepresentations to the PTO in connection with federal registration of the Whisper Quiet mark; (2) misuse of the trademark registration symbol ® in connection with the terms Whisper Quiet for products not covered by the registration; and (3) overly aggressive attempts to prevent LG and third parties from fair use of the words whisper quiet.

Because defendants' unclean hands defense is addressed only to equitable claims for which the court, and not the jury, will be the ultimate arbiter, the court has more leeway in determining the validity of such defenses on a motion for summary judgment.  The court has already considered and rejected defendants' assertion of misrepresentation before the PTO.  With regard to alleged misuse of the federal trademark registration symbol, the record shows that the use was sporadic, inadvertent, and ultimately the subject of curative safeguards.  The Sixth Circuit Court of Appeals acknowledges the validity of an unclean hands defense to deny injunctive relief only when the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability or bad faith. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995).  Defendants' proofs on the alleged misuse of the trademark symbol, taken at face value, are insufficient to move any court of equity to deny injunctive relief in an otherwise appropriate case.

Defendants' allegation of trademark misuse arising from overly aggressive policing of the mark fails for want of a substantial basis in law.  Defendants assert that Whirlpool has attempted to suppress all use of the words Whisper Quiet in connection with any household appliances, even uses that are descriptive only and would fall under the fair use doctrine.  As the

court has noted above, Whirlpool's enforcement efforts have clearly been overly aggressive. Defendants fail to cite, however, any statutory or common-law authority that would grant an alleged infringer a claim or defense based on a trademark owner's attempts to expand the use of its trademark beyond its legal bounds. Defendants' assertion is reminiscent of the concept of patent misuse, pursuant to which an alleged infringer is granted an equitable defense to infringement where the patentee attempts to expand the limited monopoly granted by its patent to unpatented products. *See, e.g., Zenith Radio Corp. v. Hazeltyne Research, Inc.*, 395 U.S. 100, 133-38 (1969); *U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1184 (Fed. Cir. 2005). Although the concept of patent misuse is well developed, the doctrine of trademark misuse is nonexistent. This is undoubtedly attributable to the fundamental differences between patent rights and trademark rights. A patent represents a limited monopoly created by law. A trademark, by contrast, creates no monopoly or property rights. *See Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996). Unlike overly aggressive assertion of patent rights, which can curtail production and stifle competition, assertion of trademark rights where they do not exist excludes no one from the market. For whatever reason, the courts have not recognized an inequitable defense for trademark misuse, and this court will not be the first one to innovate in this area.

All of defendants' assertions of unclean hands are legally insufficient to bar injunctive relief, assuming that such relief is otherwise proper in this case. Plaintiffs will therefore be granted a summary judgment on paragraph 47 of the affirmative defenses.

## Conclusion

Plaintiffs are entitled to a partial summary judgment on count I, brought under section 32(1) of the Lanham Act, concerning the validity of their registered trademark 1,698,772 for dishwashers and clothes washing machines. Plaintiffs' motion for summary judgment as to liability (docket # 195) will be granted to this extent, but denied on all other issues. Except with regard to their registered trademark for dishwashers and washing machines, plaintiffs have failed to establish that the mark Whisper Quiet has garnered secondary meaning with regard to any product not covered by the registered trademark. Defendants' motion for a summary judgment of noninfringement (docket # 215) will therefore be granted with regard to count II of the amended complaint (arising under section 43(a) of the Lanham Act) and count III (Michigan common law) for any trademark rights in the Whisper Quiet mark relating to any other appliance. As a result of this ruling, the only remaining issue for trial on plaintiffs' *prima facie* case is whether defendants' use of the words Whisper Quiet on the consoles of their clothes washing machines and dryers infringes plaintiffs' registered trademark because it creates a likelihood of confusion, under section 32(1) of the Lanham Act, section 43(a) of the Lanham Act, or Michigan unfair competition law.

Plaintiffs' motion for summary judgment on the affirmative defenses and counterclaim (docket # 207) will be granted in part and denied in part, as follows:

A.  A partial summary judgment in favor of plaintiffs will be granted with regard to the following affirmative defenses set forth in the third amended answer: ¶ 34 (failure to state a claim upon which relief can be granted); ¶ 43 (fraud on the PTO); ¶ 44 (invalid registration); ¶ 45 (lack of trademark rights); ¶ 46 (lack of secondary meaning for sound reduction systems); and ¶ 47 (unclean hands).

B.     The following affirmative defenses in the third amended answer will be stricken:  ¶ 35 (no likelihood of confusion); ¶ 36 (descriptive use of the mark by plaintiffs); ¶ 37 (generic nature of mark); ¶ 39 (abandonment); ¶ 40 (estoppel); ¶ 41 (abandonment).

C.     Summary judgment will be denied as to the following affirmative defenses:  ¶ 38 (fair use); and ¶ 42 (laches).

D.     The following counts of the counterclaim will be deemed voluntarily dismissed:  count V, count VI.

E.     Plaintiffs will be granted a partial summary judgment dismissing counts IV, VII, VIII, and IX of defendants' counterclaim.  Plaintiffs' motion will be denied as to counts I, II, and III of the counterclaim.


Dated:   November 17, 2005                    /s/  Joseph G. Scoville_____
                                              United States Magistrate Judge